# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ANNIE LOU FIELDS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-13-505-RAW-SPS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Annie Lou Fields requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born November 25, 1966, and was forty-five years old at the time of the administrative hearing (Tr. 40). She completed the twelfth grade and earned a CNA, and has worked as CNA (Tr. 27, 176). The claimant alleges that she has been unable to work since August 18, 2009, due to a back injury, right knee problems, neck problems, and depression (Tr. 175).

## Procedural History

On October 26, 2009, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ John Antonowicz held an administrative hearing and determined the claimant was not disabled in a written opinion dated December 11, 2012 (Tr. 19-29). The Appeals Council denied review; thus, the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the ability to perform less than the full range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except that she had the additional limitations of using her dominant right to frequently reach, handle, push/pull, finger and

fee; using her left non-dominant upper extremity to occasionally reach, handle, push/pull, finger and feel; understanding, remembering, and carrying out short and simple 1 to 3 step instructions; performing simple repetitive and routine tasks; making simple work related decisions; adapting to few if any workplace changes; occasionally interacting with co-workers, supervisors, and the general public (Tr. 23). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform in the regional and national economies, *e. g.*, lens inspector and film inspector (Tr. 28).

**Review**

The claimant contends that the ALJ's step five findings were legally flawed in that there was an unresolved conflict between the Dictionary of Occupational Titles and the vocational expert's testimony, and the ALJ failed to identify jobs that existed in significant numbers. The undersigned Magistrate judge finds the claimant's contentions dispositive, and that the decision of the Commissioner should therefore be reversed.

The claimant testified at the administrative hearing as to her education, work experience, and physical impairments (Tr. 40-48). The ALJ asked the vocational expert ("VE") whether there were any jobs available in the regional or national economy that would allow for an unskilled, sedentary work pace based on simple one to three-step tasks requiring no formal training or education, and that the individual could use her left non-dominant upper extremity occasionally for pushing, pulling, reaching, handling, fingering, feeling, and could use the right hand frequently for those activities (Tr. 69-70). In response, the VE stated, "Basically, she's right-handed and she's limited to frequent

4

under this hypothetical number two and only occasional with the left hand, more as a guide" (Tr. 71). The VE explained that these restrictions are most appropriately matched in quality control occupations where the worker is primarily visually inspecting products, and "handling is done with the dominant hand, in her case it's the right hand and the handling is listed as occasional which would certainly meet the ability to use her dominant hand at a frequent level" (Tr. 71). The VE provided the examples of lens inspector, with a Dictionary of Occupational Titles (DOT) number of 716.687-030; film inspector, DOT number 726.684-050; and dowel inspector, DOT number 669.687-014 (Tr. 71). The VE stated that the jobs described were consistent with the description in the DOT (Tr. 68).

In his written decision, the ALJ adopted limitations that the claimant could perform sedentary work, and could use her dominant right to frequently reach, handle, push/pull, finger and feel; but could use her left non-dominant upper extremity occasionally to reach, handle, push/pull, finger and feel. Further, he limited the claimant to understanding, remembering, and carrying out short and simple 1 to 3 step instructions, performing simple repetitive and routine tasks, making simple work-related decision, adapting to few if any workplace changes, and only occasional interaction with co-workers, supervisors, and the general public (Tr. 23). The ALJ adopted the VE's testimony that the claimant could perform the unskilled sedentary jobs of lens inspector and film inspector. He did not find that the claimant could perform the third job listed by the VE, dowel inspector, nor did he explain the omission. He then stated that the VE's "testimony [wa]s consistent with the information contained in the [DOT]" (Tr. 28). The

claimant argues that the VE's testimony, despite his statements to the contrary, was in conflict with the DOT because (i) the job of film inspector requires constant reaching, handling, and fingering under the DOT, (ii) the ALJ chose not to rely on the job of dowel inspector, and (iii) the ALJ failed to make a determination that the job of lens inspector existed in significant numbers in the national or regional economy.

Under Social Security Ruling 00-4p, "When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the [ALJ] must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The [ALJ] will explain in the determination or decision how he or she resolved the conflict. The [ALJ] must explain the resolution of the conflict *irrespective of how the conflict was identified*." 2000 WL 1898704, at *4 [emphasis added]. Although the VE testified in this case that there was no conflict between his testimony and the DOT, there *are* conflicts that the ALJ was required to resolve. *See Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999) ("[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability.").

First, a conflict exists because the film inspector job requires constant reaching, handling, and fingering, in conflict with the claimant's RFC. DICOT § 726.684-050, Film Touch-Up Inspector. *See Herbert v. Barnhart*, 2002 WL 31180762 at *8-9 (D. Kan. Sept. 19, 2002) (reversing and remanding to ALJ, partially because the identified jobs of cashier and ticket seller required frequent reaching, handling, and fingering which

6

appeared to be in conflict with the claimant's RFC restrictions from rapid, repetitive use of hand controls) [unpublished opinion]. The ALJ failed to ask the VE to reconcile this conflict or clarify how the DOT could be applied to the limitation on hand controls, and the ALJ therefore committed reversible error in violation of this court's holding in *Haddock*. *See also Krueger v. Astrue*, 337 Fed. Appx. 758, 760-762 (10th Cir. 2009) (reversing and remanding in part because ALJ failed to resolve conflict between VE's testimony and DOT job descriptions); *Carpenter v. Astrue*, 537 F.3d 1264, 1270-1271 (10th Cir. 2008) ("The ALJ is obligated to explain conflicts between a VE's testimony and a job description in the DOT, however, and therefore must elicit *enough vocational evidence* for this court to determine whether there is a conflict.") [emphasis added]; *Hackett v. Barnhart*, 395 F.3d 1168, 1175 (10th Cir. 2005) (applying *Haddock* to nonexertional limitations); *Poppa v. Astrue*, 569 F.3d 1167, 1173 (10th Cir. 2009) (noting that SSR 00-4p "requires that an ALJ must inquire about and resolve any conflicts between a [VE's] testimony regarding a job and the description of that job in the [DOT]"). The Commissioner attempts to salvage the ALJ's findings by arguing that the VE "bridged the gap" of differences between the DOT and the claimant's RFC when he stated that the jobs did not require bilateral dexterity so that the claimant could meet frequent arm and hand demands with her dominant arm. These arguments fail for two reasons. One, a cursory review of this job reveals that it does not conform to the claimant's RFC due to the statement that the job requires "constant," rather than merely frequent, reaching, handling, and fingering. Two, the undersigned Magistrate Judge will not adopt the Commissioner's post-hoc rationalizations. *See Haga v. Astrue*, 482 F.3d

7

1205, 1207-08 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.") [citations omitted].

Although this one unresolved conflict as to these limitations would have been harmless error if other jobs had been identified that did not pose a conflict, they are not harmless here because the ALJ did not adopt the finding that the claimant could perform the job of dowel inspector (and the Court will not supply such a finding here) and questions remain as to whether the remaining job of lens inspector existed in significant numbers. *See Stokes v. Astrue*, 274 Fed. Appx. 675, 684 (10th Cir. 2008) (finding any error on whether claimant could perform job was harmless error since there were still two jobs claimant could perform and no "reasonable factfinder could have determined that suitable jobs did not exist in significant numbers in either the region where Ms. Stokes lives or several regions of the country.") [unpublished opinion].

At step five, the ALJ listed the two occupations of lens inspector and film inspector. He noted the VE's testimony that the lens inspector job had 6,000 jobs nationally and 600 jobs regionally while the film inspector job had 12,000 jobs nationally and 1,200 jobs regionally (Tr. 71), then concluded that the claimant was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy" (Tr. 28). Because the film inspector job has been eliminated, the issue is whether the lens inspector job, with 6,000 jobs nationally and 600 jobs regionally, is work that exists in significant numbers. The determination that work can be performed in significant numbers is considered case-specific, and "the issue of numerical

significance entails many fact-specific considerations requiring individualized language as applied to a particular claimant's factual situation." *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004), *quoting Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992). The Tenth Circuit has held that this finding is not limited to local or regional numbers, but is instead a determination of whether work exists in significant numbers in the regional *or* national economy. *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009). Those factors the Court should consider include "the level of claimant's disability; the reliability of the vocational expert's testimony; the distance claimant is capable of traveling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on." *Trimiar*, 966 F.2d at 1330, *quoting Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988). However, "[t]his case does not fit neatly within the Tenth Circuit's prior decisions on this issue." *Keyes-Zachary v. Colvin*, 2015 WL 65528, at *7 (N.D. Okla. Jan. 5, 2015) (slip op.). *Compare Rogers v. Astrue*, 312 Fed. Appx. 138, 141 (10th Cir. 2009) (finding no error where "the VE testified that, on the basis on his professional experience, 11,000 sedentary hand packager jobs existed in the national economy, the apparent conflict between the DOT and the VE's testimony regarding the job's exertional requirement was reasonably explained, and the ALJ could rely on that testimony as substantial evidence to support her determination of nondisability.") *with Norris v. Barnhart*, 197 Fed. Appx. 771, 777 (10th Cir. 2006) (reversing and remanding where the ALJ did not find whether each job, "standing alone, constituted a significant number within the meaning of 42 U.S.C. § 423(d)(2)(A). Given the fairly small number of those two jobs [system surveillance monitor, 700 to 1,000 jobs

9

regionally and 65,000 to 85,000 nationally; food and beverage order taker, 600 jobs regionally and 125,000 nationally] it may be necessary for the ALJ to give consideration to the factors that should direct an ALJ's resolution of the significant number inquiry."), *citing Trimiar*, 966 F.2d at 1330. *But see Stokes v. Astrue*, 274 Fed. Appx. 675, 684 (10th Cir. 2008) (where the two remaining available jobs cited by the ALJ, there were 11,000 jobs regionally and 152,000 nationally, "we do not believe any reasonable factfinder could have determined that suitable jobs did not exists in significant numbers in either the region where Ms. Stokes lives or several regions of the country."). In *Keyes-Zachary*, the district court declined to make a finding that jobs existed in significant numbers where the VE testified that there were 7,000 jobs regionally and 80,000 jobs nationally, "[g]iven the Tenth Circuit's stated preference that a reviewing court should make a dispositive finding only in 'exceptional circumstance[s].'" 2015 WL 65528, at *7 (N.D. Okla. Jan. 5, 2015). The undersigned Magistrate Judge therefore finds that the ALJ did not properly establish in this case the remaining job alone exists in significant numbers and declines to supply that finding here. *Verstraete v. Astrue*, 2013 WL 238193, at *5 (D. Kan. Jan. 22, 2013) ("The court will not imply such a finding by the ALJ, especially given that any specific finding by the ALJ would have to be supported by evidence in the record.").

Accordingly, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further proceedings. On remand, the ALJ should resolve any conflicts between the VE's testimony and the DOT and determine what impact, if any, such resolution has on the issue of the claimant's disability. "Additionally, or

alternatively, the ALJ should determine, based on the specific facts of plaintiff's case, whether a 'significant number' of [] positions are available." *Keyes-Zachary*, 2015 WL 65528, at *8 (N.D. Okla. Jan. 5, 2015).

## Conclusion

The undersigned Magistrate Judge hereby **PROPOSES** a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus **RECOMMENDS** that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 6th day of March, 2015.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**